UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ALEXANDRA STARK, individually and on behalf of all others similarly situated,<br><br>   *Plaintiff*,<br><br>*v.*<br><br>BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA, a North Carolina not for profit corporation, and CHANGE HEALTHCARE RESOURCES, LLC, a Delaware registered company,<br><br>   *Defendants.* | Case No. 1:23-cv-00022-CCE-LPA |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## I. INTRODUCTION

Plaintiff Alexandra Stark ("Plaintiff") and Defendants Blue Cross and Blue Shield of North Carolina ("BCBSNC") and Change Healthcare Resources, LLC ("Change Healthcare") have reached a Class Action Settlement Agreement and Release in this proposed class action brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (the "Agreement" or "Settlement") arising primarily from robocalls calls made by Change Healthcare that were intended for BCBSNC insureds but, due to the transient nature of cellular telephone numbers,

were in fact made to consumers who were not BCBSNC insureds – *i.e.*, "wrong number" calls. *See* Declaration of Avi Kaufman, attached as Exhibit 1, ¶ 2.

The Agreement,[1] which is subject to this Court's final approval, creates a non-reversionary common fund of $1,670,000.00 for the benefit of Plaintiff and proposed class members who received pre-recorded or artificial voice calls from Change Healthcare on BCBSNC's behalf despite (1) not being BCBSNC insureds or (2) having opted out of such calls. This amounts to more than $1,190 for each of the 1,401 potential Identifiable Settlement Class Members, and more than $550 for each of the 3,000 potential Settlement Class Member, including Unidentifiable Settlement Class Members.[2]

Notably, all Identifiable Settlement Class Members who do not opt out and for whom all mailed notices are not returned as undeliverable will automatically receive a payment without being required to file a claim. To date, mailed notice has been successfully delivered to more than 900 Identifiable Settlement Class Members, resulting in a 65% effective claims rate for Identifiable Settlement Class Members. *Id*. ¶ 5. Additionally, nearly 8 million digital notice impressions have been distributed to adults 18 years or older in North Carolina, resulting in more than 600 additional valid claims from Unidentifiable Settlement Class Members, and a total

---

[1] The Agreement can be found at 63-1 and revised claim form and notice at 65-2 and 65-3, respectively. Capitalized terms used herein, unless otherwise defined, have the same definitions as those terms in the Agreement.

[2] Given Defendants' calling practices during the class period and the average rate of reassignment of telephone numbers, the parties estimate that there are approximately 3,000 total Settlement Class Members, including Unidentifiable Settlement Class Members. Kaufman Decl. ¶ 4; *see also In the Matter of Advanced Methods to Eliminate Unlawful Robocalls*, CG Docket No 14-59, Second Notice of Inquiry, at ¶¶ 5, 23 (FCC July 13, 2017) ("according to one source 100,000 numbers are reassigned by wireless carriers every day").

effective claims rate of more than 50% for the Settlement Class as a whole. *Id.* ¶ 5. And not a single class member has opted out of or objected to the Settlement. *Id.* ¶ 5.

The parties reached the Settlement after more than a year of contentious litigation, which included multiple dispositive motions, significant written fact discovery, expert analysis, and Defendants' corporate representatives' depositions. *Id.* ¶ 6. By the time the parties finalized an agreement, they were well aware of the strengths and weaknesses of their respective positions and the risks associated with pursuing TCPA "wrong number" cases through class certification and trial. *Id.* ¶ 7; *see, e.g., Davis v. Capital One, N.A.*, No. 1:22-cv-00903, 2023 U.S. Dist. LEXIS 189255, at *34-36 (E.D. Va. Oct. 20, 2023) ("Davis has also cited 'wrong-number' cases where class certification was granted, but there were findings in those cases, not present here, and in some of those cases, reserved on whether the issue of consent would justify de-certification. … Capital One, by contrast, has pointed to numerous district court decisions where a 'wrong-number' class was not certified for class treatment. Courts in these cases generally all found that class certification was inappropriate because of a lack of ascertainability and the predominance of individualized issues over common issues.").

In addition, to discuss settlement, the parties engaged in a full-day mediation session and subsequent negotiations with the able assistance of a retired federal court magistrate judge, Hon. David E. Jones (Ret). Kaufman Decl. ¶ 8.

If finally approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, hard-fought litigation centered on unsettled

3

legal questions. The proposed Settlement is fair, reasonable, and adequate, and, notwithstanding the substantial, more than 50% claims rate, the anticipated Settlement Class Member payments, which are estimated to be more than $600 if final approval and Class Counsel's motion for fees are granted, will far exceed the payments in similar "wrong number" TCPA cases across the country. Kaufman Decl. ¶ 9; *see, e.g., Williams v. Bluestem Brands, Inc.*, No. 8:17-cv-1971-T-27AAS, 2019 U.S. Dist. LEXIS 56655, at *3 (M.D. Fla. Apr. 2, 2019) (preliminary approving $1,269,500 settlement for an approximately 280,000 person class in a TCPA "wrong number" case); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2017 U.S. Dist. LEXIS 91448, at *3 (M.D. Fla. June 5, 2017) ("Chase established a $3.75 million fund for the 675,000-member class, and 24,156 class members submitted a valid claim [resulting in a claims rate of less than 4%]. Each claimant will receive approximately $81, which equals or exceeds the recovery in a typical TCPA class action.").

Accordingly, given significant monetary relief that will actually be delivered to the majority of Settlement Class Members by the Settlement, resulting from the diligent efforts to litigate, settle, and structure and administer the settlement of this Litigation in a manner directly aimed at maximizing the benefit to the Settlement Class, Plaintiff respectfully requests that the Court grant final approval to the Settlement, find that the class notice program satisfies due process and Rule 23, find the Settlement Agreement to be fair, reasonable, and adequate to the Class, and dismiss the claims against Defendants with prejudice, retaining jurisdiction of matters only relating to enforcement of the Settlement Agreement.

4

## II. BACKGROUND

On January 10, 2023, Plaintiff Alexandra Stark filed a complaint against Blue Cross and Blue Shield of North Carolina Foundation and Change Healthcare Inc. in this action asserting that defendants violated the TCPA by making pre-recorded calls to consumers without consent and for failing to stop the calls when consumers expressly request to not be called. More specifically, arising primarily from robocalls calls made by Change Healthcare that were intended for BCBSNC insureds but, due to the transient nature of cellular telephone numbers, were in fact made to consumers who were not BCBSNC insureds – *i.e.*, "wrong number" calls. On March 9, 2023, Change Healthcare answered the complaint. ECF 16. Also on March 9, 2023, defendant Blue Cross filed a motion to dismiss. ECF 17. In response to the motion to dismiss and Change's averment, Plaintiff filed an amended complaint, correcting defendants' corporate entities, against Defendants BCBSNC and Change Healthcare. ECF 22.

On May 1, 2023, Change Healthcare answered the amended complaint. On June 6, 2023, BCBSNC moved to dismiss the amended complaint. ECF 32. The parties fully briefed the motion, centering on the sufficiency of Plaintiff's vicarious liability claims, and on July 17, 2023, the Court denied BCBSNC's motion to dismiss. ECF 41. Thereafter, on August 2, 2023, BCBSNC answered the amended complaint.

Based on discovery taken from Change Healthcare, on September 28, 2023, Plaintiff filed a second amended complaint, seeking to expand the claims against Change Healthcare to encompass calls made on behalf of its other clients other than

5

BCBSNC. ECF 48. On October 12, 2023, BCBSNC answered the second amended complaint, ECF 51, and Change Healthcare moved to dismiss, based on the expanded scope of the claims, ECF 52. The parties fully briefed the motion, and it was granted on December 15, 2023, limiting the class to recipients of calls made only on BCBSNC's behalf. ECF 57. Thereafter, on January 5, 2024, Change Healthcare answered the second amended complaint. ECF 59.

Since inception, the case has involved extensive discovery. On July 11, 2023, Plaintiff served written discovery requests on Defendants respectively. Defendants responded to discovery, and the parties engaged in lengthy meet and confers which resulted in both Defendants supplementing their responses. There have been thousands of pages of documents exchanged in discovery. Plaintiff worked closely with an expert to analyze the voluminous call records produced by Change Healthcare, preparing Plaintiff to resolve this action for the benefit of the Settlement Class. Plaintiff also responded to separate sets of discovery requests from each defendant. On November 27, 2023, Plaintiff served notices for Defendants' corporate representative depositions, and began a lengthy conferral process with Defendants regarding deposition topics. Plaintiff ultimately took the corporate representative depositions on topics central to the Litigation prior to the settlement of this action on a class basis. Kaufman Decl. ¶ 13.

On January 29, 2024, the parties participated in an all-day mediation with Judge Jones's assistance. The parties did not reach a settlement. However, over the course of the following week, with Judge Jones's further assistance, the parties continued to engage in negotiations aimed at resolving the case on a class basis, and,

on February 5, 2024, the parties reached agreement as to the monetary amount of the Settlement.

The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the Litigation against Defendants through trial and appeals. Class Counsel also has taken into account the difficulties in obtaining class certification and proving liability in "wrong number" cases, the uncertain outcome and risk of the Litigation, especially in complex actions such as this one, and the inherent delays in such litigation. *See, e.g., Davis*, 2023 U.S. Dist. LEXIS 189255, at *34-36.

Class Counsel believes that the proposed Settlement is an excellent result for the Settlement Class, far exceeding the per class member and per claim monetary amounts and claims rates of similar class action settlements in "wrong number" cases. Kaufman Decl. ¶ 15; *see, e.g., James*, 2017 U.S. Dist. LEXIS 91448, at *3 (approving settlement in TCPA "wrong number" case with less than a 4% claims rate and an approximately $81 payout per claimant); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) (approving settlement in TCPA "wrong number" case and finding: "Here, there were 308,026 claims out of 3,982,645 potential class members, resulting in a higher than average claims rate of 7.7%. Although Class Members are only expected to recover approximately $13.75, the Court finds that in light of the large number of Class Member claimants and high claims rate, the amount of the Settlement Fund weighs in favor of approving the Settlement.").

Based on their evaluation of all of these factors, Plaintiff and Class Counsel

7

have determined that the Settlement is in the best interests of Plaintiff and the Settlement Class. Kaufman Decl. ¶ 15.

## III. THE PROPOSED SETTLEMENT

### A. The Settlement Class

The proposed Settlement Class includes: All regular users or subscribers to numbers assigned to wireless carriers which Change Healthcare, on behalf of BCBSNC, called during the Settlement Class Period using an artificial or pre-recorded voice who were not members or subscribers of BCBSNC or that opted out of receiving calls from Change Healthcare. Excluded from the Settlement Class are: (1) the Judges presiding over this action and members of their families; (2) the Defendants, Defendants' respective subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded person(s). Agreement at § 1.1.33.

### B. Settlement Relief

The Settlement provides meaningful monetary relief. Pursuant to the Agreement, Defendants created a non-reversionary Settlement Fund in the amount of $1,670,000.00 for the purpose of making all required payments under this Settlement. Agreement at § 4.

## C. Notice Program

Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Settlement provided for direct mailed notice to Identifiable Settlement Class Members, a settlement website, and internet media campaign. The settlement administrator has completed all notice obligations to date and is continuing to administrate the notice and claims process.

To date, direct mailed notice has been successfully delivered to more than 65% of Identifiable Settlement Class Members, and nearly 8 million digital notice impressions have been distributed to adults 18 years of age or older in North Carolina, resulting in an effective reach rate of over 70% for the Notice Plan as a whole. Declaration of Gio Santiago, Exhibit 2, at ¶ 9. And based on the implementation of the Notice Plan, there have been over 700,000 visits to the Class Settlement Website, and nearly 400,000 timely claims filed.

As a result, the notice accomplished in this case exceeds established due process requirements for class notice. *See* Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010), available at https://goo.gl/KTo1gB (instructing that notice should have an effective "reach" to its target audience of 70-95%.); *see also Swift v. Direct Buy, Inc.*, No.

9

2:11-cv-401-TLS, 2013 WL 5770633, at *3 (N.D. Ind. Oct. 24, 2013) ("The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class.").

All in all, the Notice Program constitutes the best notice practicable under the circumstances, provides sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Rule 23. Kaufman Decl. ¶ 16.

## D.    Claims

The Settlement Administrator shall issue payment by check or electronic payment from the Settlement Fund to each Identifiable Settlement Class Member who does not opt out of the Settlement and for whom all mailed notices are not returned as undeliverable, each Identifiable Settlement Class Member for whom all mailed notices are returned as undeliverable who timely submits a valid claim, and each Unidentifiable Settlement Class Member who timely submits a valid claim. The deadline to submit a claim, request exclusion from the Settlement, or to object to the Settlement is January 2, 2025.

As of January 2, 2025, mailed notice has been successfully delivered to more than 65% of Identifiable Settlement Class Members and more than 600 valid claims have been filed by Unidentifiable Settlement Class Members, resulting in a claims rate of more than 50% of the total Settlement Class. Additionally, no Settlement Class Members have objected to or opted out of the Settlement. Santiago Decl. ¶¶ 15-16.  Given these results, there can be no doubt that Settlement Class Members have reacted positively to the settlement.

## IV. THE SETTLEMENT MERITS FINAL APPROVAL

### A. The Settlement Class Should Be Certified

In granting preliminary approval, the Court provisionally certified the Settlement Class for settlement purposes. For all the same reasons contained in Plaintiff's preliminary approval memorandum (ECF 63), the Settlement Class meets the requirements of Rule 23, and should be certified for settlement purposes.

### B. The Settlement Is Fair, Reasonable And Adequate

The settlement of a class action requires approval by a district court. Fed. R. Civ. P. 23(e); *Scardelletti v. Debarr*, 43 F. App'x. 525, 528 (4th Cir. 2002); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). A court may do so only after a hearing and on finding that the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(C). "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158 ; *see* Fed. R. Civ. P. 23(e) (identifying relevant factors for settlement approval: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate…; and (D) the proposal treats class members equitably relative to each other.").

At this final approval stage, the Fourth Circuit has adopted a bifurcated analysis involving inquiries into the fairness and adequacy of the settlement. *Scardelletti*, 43 F. App'x. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158.

A class settlement is fair when it is "reached as a result of good faith

bargaining at arm's length, without collusion." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159. The Court should be satisfied that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Smith v. Res-Care, Inc.*, CV 3:13-5211, 2015 WL 461529, at *3 (S.D.W. Va. Feb. 3, 2015) (citing Manual for Complex Litigation, § 30.44 (1985)). "Absent evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Kirven v. Central States Health & Life Co. of Omaha*, No. 3:11-2149-MBS, 2015 WL 1314086, at *5 (D.S.C. Mar. 23, 2015); *Geissler v. Stirling*, No. 4:17-cv-01746-MBS, 2019 U.S. Dist. LEXIS 131110, at *14-15 (D.S.C. Aug. 5, 2019).

In evaluating the fairness of a proposed settlement, the Court should consider these factors: (1) the posture of the case at the time the settlement is proposed; (2) the extent of discovery conducted; (3) the circumstances surrounding the negotiations; (4) the experience of counsel in the relevant area of class action litigation; and (5) whether the plaintiff and class counsel have adequately represented the class. *Scardelletti*, 43 F. App'x. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; Fed. R. Civ. P. 23(e)(2)(A)-(B). "A proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arm's length negotiations." *Geissler*, 2019 U.S. Dist. LEXIS 131110, at *9 (internal citation omitted).

12

In determining adequacy, the relevant considerations include: (1) the relative strength of the plaintiff's case on the merits; (2) the existence of any difficulties of proof or strong defenses plaintiff is likely to encounter if the case proceeds to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant and likelihood of recovery of a litigated judgment; (5) the degree of opposition to the settlement; (6) the terms of any proposed award of attorney's fees; (7) the plan for distributing settlement funds to class members; and (8) whether the proposal treats class members equitably relative to each other. *Scardelletti*, 43 F. App'x. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; Fed. R. Civ. P. 23(e)(2)(C)-(D).

All of these factors weigh strongly in favor of final approval.

### 1. The Posture of the Case and the Discovery Conducted By The Time Of Settlement Support Approval

"This factor requires the court to determine whether the case was well-enough developed for the parties to appreciate the full landscape of their case." *Kirven,* 2015 U.S. Dist. LEXIS 36393, at *11-12 (internal citation omitted). Here, the parties reached a settlement after more than a year of contentious litigation, including multiple dispositive motions, significant written fact discovery, expert analysis, and Defendants' corporate representatives' depositions. Kaufman Decl. ¶¶ 6-13.

Class Counsel's review of the discovery and attendant issues enabled them to gain an understanding of the evidence related to central questions in the action and prepared them for well-informed settlement negotiations based on a thorough analysis of the issues, including the difficulties in obtaining class certification and

13

proving liability in "wrong number" TCPA cases. As a result, both the parties and the Court have sufficient information to appraise the significant risks in continued litigation, including but not limited to class certification prospects and the likelihood of establishing liability for the calls, and the fairness of settlement terms. That knowledge base, coupled with the parties' respective assessments of the relative strengths and weaknesses of their legal positions, all weigh in favor of granting final approval, because they ensure that the parties and the Court are able to fairly evaluate the case.

### 2. The Negotiation Process Was At All Times Arm's Length And Was Overseen By An Experienced Mediator

"The circumstances surrounding the negotiations also favor approval. An experienced mediator assisted the parties, and there is no evidence of coercion or collusion that would cast doubt on the fairness of these negotiations." R*eynolds v. Fid. Invs. Institutional Operations Co., Inc.*, No. 1:18-CV-423, 2020 U.S. Dist. LEXIS 2710, at *13-14 (M.D.N.C. Jan. 7, 2020). Here, the circumstances surrounding the negotiation of the Settlement demonstrate, that the negotiations were wholly in good faith and without collusion. The Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this action. Kaufman Decl. ¶ 17. Furthermore, Class Counsel are particularly experienced in the litigation, certification, and settlement of nationwide TCPA class action cases. *See* Class Counsel Declarations filed in support of Motion for Class Counsel Fees (ECF 70-1 and 70-2).

The parties reached agreement only after a full day mediation with Hon. David

E. Jones (Ret.), an experienced mediator, and his continued assistance with subsequent negotiations. Kaufman Decl. ¶ 14. At all times the negotiations were at arms' length and free from collusion. *Id.* Plaintiff's counsel steadfastly advocated for substantial settlement relief. Plaintiff and Plaintiff's counsel also were well aware of the risks they faced if they continued to litigate, particularly the risks inherent in class certification and the difficulties involved in "wrong number" cases. *Id.* ¶ 18. Plaintiff relied on the judgment of counsel, who have extensive experience litigating, settling, and trying TCPA, and other class actions. In such circumstances, it may be presumed that a settlement is fair. *See Good v. W. Va.-Am. Water Co.*, No. 14-1374, 2017 WL 2884535 (S.D.W. Va. July 6, 2017) (finding "no evidence of chicanery" in the circumstances surrounding the settlement and noting counsel's "abundance of experience" and the advanced stage of the litigation).

### 3. *Class Counsel Are Experienced TCPA Litigators and Plaintiff and Class Counsel Have Adequately Represented the Class*

"The inquiry into the adequacy of legal counsel focuses on whether counsel is competent, dedicated, qualified, and experienced enough to conduct the litigation and whether there is an assurance of vigorous prosecution." *Kirven*, 2015 U.S. Dist. LEXIS 36393, at *13. And the inquiry into a plaintiff's adequacy focuses on whether their "claims are sufficiently interrelated with and not antagonistic to the class claims as to ensure fair and adequate representation." *Lott v. Westinghouse Savannah River Co.*, 200 F.R.D. 539, 561 (D.S.C. 2000).

Here, Class Counsel diligently litigated the class's claims. Consistent with that, Class Counsel are experienced class action attorneys who are skilled in

litigating and resolving class actions in general, and TCPA class actions in particular, and are extremely familiar with all of the factual and legal issues of this case. Specifically, Class Counsel focus their practices on litigating consumer class action claims and have particularly broad experience in the litigation of TCPA class actions. *See* Class Counsel Declarations filed in support of Motion for Class Counsel Fees (ECF 70-1 at ¶¶ 20-25 and 70-2 at ¶¶ 3-4). Given the breadth of Class Counsel's experience, and the diligence with which they pursued the class's claims, their opinion should weigh strongly in favor of approval of the Settlement.

Additionally, Plaintiff's claims and interests in this litigation are aligned with those of the class. Plaintiff and all class members seek the same recovery for the same type of unlawful calls pursuant to the TCPA. And, notwithstanding the significant benefit that will be conferred on the class through her efforts, Plaintiff is not seeking a service award.

And the conclusion that Class Counsel and Plaintiff have adequately represented the class is supported by the terms of the proposed award of attorneys' fees, the plan for distributing settlement funds to class members, and the manner in which the settlement treats class members relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(C)-(D).

Specifically, the settlement provides an efficient and fair manner for distributing settlement funds to the maximum possible number of Settlement Class Members. Identifiable Settlement Class Members who received mailed notice will automatically be sent payments without having to submit a claim. Other Settlement Class Members had the ability to submit claims for payment by submitting online a

simple claim form that included their name, address, and telephone number at which they certified they received calls subject to the settlement. And all Settlement Class Members receiving automatic payments or who submit valid claims will receive the same amounts from the settlement. Consistent with that, the effective claims rate exceeds 50%, and all valid claimants will receive more than $600.

Moreover, the settlement was not conditioned on any award of attorneys' fees and Defendants retained the right to object to Class Counsel's fee application. Additionally, Plaintiff is not seeking a service award. And, finally, attorneys' fees and Plaintiff's claim will be paid on a similar timeline to other class member payments. Kaufman Decl. ¶ 19.

As a result, each of these factors weighs in favor of final approval.

### 4. *The Relative Strength Of The Plaintiff's Case On The Merits And The Existence Of Any Difficulties Of Proof Or Strong Defenses The Plaintiff Is Likely To Encounter If The Case Goes To Trial*

While Plaintiff and the Class believe they would prevail on class certification and at trial, Defendants strongly argued otherwise. The risk of no recovery here—and in complex cases of this type more generally—is real.

By the time the parties finalized an agreement, they were well aware of the strengths and weaknesses of their respective positions and the risks associated with pursuing TCPA "wrong number" cases through class certification and trial. *See, e.g., Davis v. Capital One, N.A.*, No. 1:22-cv-00903, 2023 U.S. Dist. LEXIS 189255, at *34-36 (E.D. Va. Oct. 20, 2023) ("Davis has also cited 'wrong-number' cases where class certification was granted, but there were findings in those cases, not present here, and in some of those cases, reserved on whether the issue of consent

would justify de-certification. … Capital One, by contrast, has pointed to numerous district court decisions where a 'wrong-number' class was not certified for class treatment. Courts in these cases generally all found that class certification was inappropriate because of a lack of ascertainability and the predominance of individualized issues over common issues."); *Sandoe v. Bos. Sci. Corp.*, 333 F.R.D. 4 (D. Mass. 2019) (denying class certification in TCPA "wrong number" case in which the plaintiff was represented by Class Counsel in this case).

Class certification is also far from automatic in TCPA cases generally. *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *1 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation), *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action), and *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same) *with Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized), and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

"In evaluating a settlement, the trial court should not decide the merits, or proceed from the assumption that victory is one hundred percent assured and that all claimed damages are properly recoverable. As one court has observed, '[a] settlement is by nature a compromise between the maximum possible recovery and the inherent risks of litigation. The test is whether the settlement is adequate and reasonable and not whether a better settlement is conceivable.'" *Muhammad v. Nat'l*

*City Mortg., Inc.*, Civil Action No. 2:07-0423, 2008 U.S. Dist. LEXIS 103534, at *13 (S.D.W. Va. Dec. 19, 2008) (internal citations omitted). The risks of the litigation and the complexity of the issues involved weigh in favor of granting final approval to the Settlement.

### 5. *The Anticipated Duration And Expense Of Additional Litigation*

The complexity, expense, and duration of litigation are factors that support approval of a settlement. *In re Corp. Litig.*, 264 F.3d 201, 231, 233 (3d Cir. 2001); *Girsh v. Jepson*, 521 F.3d 153, 157 (3d Cir. 1975) (identifying complexity, expense, and duration as one of nine factors in determining the fairness of settlement). Here, major hurdles remain in this litigation, including class certification and summary judgment. Kaufman Decl. ¶ 15. The parties ultimately elected to forgo the expense of continued litigation in reaching a settlement that took the significant risks of further litigation into account while still providing remarkable monetary relief.

### 6. *The Solvency Of The Defendants And Likelihood Of Recovery On A Litigated Judgment*

While the solvency of the Defendants and the ability to recover if Plaintiff were to proceed to trial is not of particular concern here, there is benefit to avoiding delay in payment and the uncertainty involved in continued litigation. As one court acknowledged in approving a TCPA settlement funded by a large company:

> Individual class members receive less than the maximum value of their TCPA claims, but they receive a payout without having suffered anything beyond a few unwanted calls or texts, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation....

19

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016). The certainty created by the Settlement achieved by Plaintiff's counsel is valuable and prudent for the Class, particularly given the monetary relief obtained on a per Settlement Class Member and per claimant basis.

### 7. *Other Factors: The Settlement Amount Is Significant And The Lack Of Objections Indicates The Class's Support*

Notwithstanding the robust claims rate, the anticipated Settlement Class Member payments, which are estimated to be more than $600, will far exceed the payments in similar "wrong number" TCPA cases across the country. Kaufman Decl. ¶ 9; *see, e.g., See, e.g., Williams*, 2019 U.S. Dist. LEXIS 56655, at *3 (M.D. Fla. Apr. 2, 2019) ($4.53 per class member); *James*, 2017 U.S. Dist. LEXIS 91448, at *3 ($5.55 per class member and $81 per claimant with a less than 4% claims rate); *Couser*, 125 F. Supp. 3d at 1044 ($2.13 per class member and $13.75 per claimant with a 7.7% claims rate).

The reaction of the class members to the settlement supports final approval as well. "An absence of objections and a small number of opt-outs weighs significantly in favor of a settlement's adequacy." *Kirven*, 2015 U.S. Dist. LEXIS 36393, at *14. The reaction of the class to the settlement has been positive, with *no objections, no opt outs*, and a *more than 50% effective claims rate*. Kaufman Decl. ¶ 5.

Given the unprecedented monetary relief obtained as a result of the vigorous litigation of this action, especially in light of the risks inherent in litigation and, more specifically, in the litigation of "wrong number" TCPA cases, and the noteworthy

claims rate achieved through the meticulous structuring and administration of the Settlement, the Settlement should be finally approved.

## CERTIFICATE OF COMPLIANCE WITH LR 7.3(d)(1)

Pursuant to Local Rule 7.3(d)(1) of the Rules of Practice and Procedure of the United States District Court for the Middle District of North Carolina, Plaintiff's counsel, certifies that the foregoing brief, which was prepared using Times New Roman 14-point proportional font, is less than 6,250 words.

Dated: January 2, 2025       Respectfully submitted,

*/s/ Avi R. Kaufman*
Avi R. Kaufman
**KAUFMAN P.A**
237 South Dixie Highway, Floor 4
Coral Gables, Florida 33133
kaufman@kaufmanpa.com
Telephone: (305) 469-5881

*/s/ Ryan Duffy*
Ryan Duffy
**The Law Office of Ryan P. Duffy, PLLC**
1213 W. Morehead Street
Suit 500, Unit #450
Charlotte, North Carolina 28208
ryan@ryanpduffy.com
Telephone: (704) 741-9399

Stefan Coleman
**Coleman PLLC**
66 West Flagler Street, Suite 900
Miami, Florida 33130
law@stefancoleman.com
Telephone: (877) 333-9427

*Class Counsel*

21

22